NOT FOR PUBLICATION
## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| COUNTRY CLUB DRIVE ASSOCIATES, LLC, a New Jersey limited liability corporation, | : : : | |
| Plaintiff, | : : | Civ. No. 07-342 (GEB) |
| and | : | **MEMORANDUM OPINION** |
| SJM COMMUNITIES, LLC, a New Jersey limited liability company, | : : | |
| Intervenor | : | |
| v. | : | |
| CLINTON TOWNSHIP SEWERAGE AUTHORITY, and TOWNSHIP OF CLINTON, a municipal corporation, | : : | |
| Defendants. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon Plaintiff Country Club Drive Associates' ("Country Club" or "Plaintiff") Motion for Preliminary Injunction, Defendant Township of Clinton's (the "Township") Motion to Dismiss, and Plaintiff's Cross-Motion to Compel Metering. The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant the Township's motion to dismiss and deny Plaintiff's Motion for Preliminary Injunction and its Motion to Compel as moot.

**BACKGROUND**

The Township is a municipal corporation located in Hunterdon County, New Jersey. (Township of Clinton Motion to Dismiss ("Township Br.") at 5; Country Club's Brief in Opposition to Motion to Dismiss ("CC Opp'n) at 1.) The Township does not own a wastewater treatment plant or a sewer treatment plant at this time, and has entered into a series of agreements since the 1970s with the neighboring Town of Clinton ("Clinton") under which Clinton provides water treatment services to some parts of the Township. (Township Br. at 5; CC Opp'n at 1.) The parts of the Township that are sewered obtained services at different times under separate agreements with Clinton, and make up five distinct areas: (a) Annandale, (b) Oak Knoll, (c) Deer Meadow, (d) Beaver Brook, and (e) Water's Edge. (Township Br. at 5-6; CC Opp'n at 1.)

   i. *The Agreement With Country Club*

Clinton Township Sewerage Authority ("the Authority") is a municipal utilities authority created by the Township under N.J.S.A. 40:14A-1 *et seq.* that administers the Township's sewer services. (Township Br. at 6; CC Opp'n at 1.) In 2005, Country Club requested that the Authority assess the remaining sanitary sewage treatment capacity for the Beaver Brook Site. (Township Br. at 6; CC Opp'n at 1.) The Authority complied, and on September 1, 2005 it entered into an agreement with Country Club ("the Agreement") stating, in relevant part, that:

> the parties hereto further agree that based on historical metered data and the transfer of sanitary sewage capacity reserved for the Beaver Brook Site to other sites within the Township of Clinton as of the date of this Agreement, that the sum of 65,300 gpd [gallons per day] of sanitary sewage treatment capacity remaining from the development is transferable by [Plaintiff] pursuant to the terms and conditions of the prior Agreement; and
>
> NOW THEREFORE . . . the parties agree as follows:

> 1. As of the date of this Agreement it is agreed by all parties that the complete Beaver Brook Site requires a wastewater capacity of 128,650 gpd and that by the virtue of the original allocation, previously completed transfers of sewage capacity, and remaining capacity that excess sanitary sewage treatment capacity of 65,300 gpd is owned by [Plaintiff]
> 2. Any transfer of the aforesaid capacity shall be governed by the November 9, 2000 Agreement as well as all other Agreements entered into amongst the Authority, [Plaintiff] and the Township of Clinton . . . .

(CC Opp'n at 7, *quoting* September 1, 2005 "Agreement Regarding Sewer Capacity", Declaration of Gregory Watts ("Watts Decl.") Ex. I; Township Opp'n at 1.)

       ii.       *The Township's Housing Project*

In early 2004, however, the Township had contacted the Authority regarding the provision of sewer service to a low-income housing project that it intended to develop. (Township Br. at 8; Declaration of Kevin Benbrook ("Benbrook Decl.") Ex. G.)  The Authority responded with a letter (the "Will-Serve Letter") advising the Township that it was "of the opinion that [the Authority] *should be able* to provide [the Township] with 20,250 [gpd] of sewage effluent treatment for the Township's proposed two low/moderate income housing projects totaling 90 condominium units . . . ." (Township Br. at 8, *quoting* Ex. G to Benbrook Dec.) (emphasis added).  This assertion was later buttressed by the Authority's engineer's August 12, 2005 report (the "2005 Rolak Report"),[1] which concluded that the Authority had enough sewage capacity to meet all of its obligations. (Township Br. at 8-9, *quoting* 2005 Rolak Report at 5, Benbrook Decl. Ex. I.)

---

[1] It appears that the 2005 Rolak Report was originally dated August 2, 2005, but that a revised version was issued on August 12.

3

### iii. The Dispute

Plaintiff allegedly contacted the Authority and the Township through Robert Benbrook to discuss the issue of capacity soon after it learned of the Will-Serve letter and the 2005 Rolak Report. (Township Br. at 9; CC Opp'n at 1.) The Authority responded to Plaintiff's inquiries by letter dated January 12, 2007, representing to Country Club: (i) that there was no interference with "any interest [Plaintiff] may have in sanitary sewage treatment capacity transferred from the Beaver Brook site to the Mews site", (ii) that the Authority had "sufficient capacity when it provided the Will-Serve letter to the Township of Clinton," and (iii) that the Authority "ha[d] sufficient sanitary sewage treatment capacity . . . to meet all of its obligations . . . ." (Township Br. at 10, *quoting* Benbrook Decl. Ex. J; CC Opp'n at 1.)

Nevertheless, Plaintiff filed a Complaint with this Court on January 22, 2007 asserting seizure and takings claims under both the Federal and State Constitutions. (Docket Entry No. 1.) On May 7, 2007, SJM Communities, LLC ("SJM" or "Intervenor") was granted the right to intervene in the litigation on the grounds that it had entered into a purchase option agreement for sewer capacity with Country Club. (Docket Entry No. 9.) SJM filed its complaint on July 30, 2007 (the "Intervenor Complaint"). (Docket Entry No. 13.) On November 29, 2007, Plaintiff filed an Amended Complaint (the "Amended Complaint"). (Docket Entry No. 24.) On December 13, 2007, Plaintiff filed a motion for preliminary injunction seeking to prevent the Authority from allocating sewage capacity to the Township. (Docket Entry No. 27.) On March 10, 2008, the Township filed a motion to dismiss Plaintiff's Amended Complaint and SJM's Intervenor Complaint. (Docket Entry No. 37.) Country Club opposed that motion, and filed a cross-motion to compel metering on April 21, 2008. (Docket Entry No. 42.) SJM filed an

opposition to Defendants' motion on the same day. (Docket Entry No. 43.)

**DISCUSSION**

      **A.      The Township's Motion to Dismiss**

The Township contends that Country Club and SJM's claims should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim under Rule 12(b)(6). The Court agrees on both counts.

Federal Rule of Civil Procedure 12(b) provides, in part, that:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . (6) failure to state a claim upon which relief can be granted . . . .

FED. R. CIV. P. 12(b).

A motion to dismiss under Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought. *Id.* at 1965-66 (abrogating *Conley*'s standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level. *Id.* at 1965. The

issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The standard in a motion to dismiss based on subject matter jurisdiction standard, on the other hand, "is much more demanding . . . ." *Edlin Ltd. v. City of Jersey City*, No. 07-3431, 2008 U.S. Dist. LEXIS 41118, at *9 (D.N.J. May 23, 2008), *quoting Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Indeed, "[w]hen subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Edlin*, 2008 U.S. Dist. LEXIS 41118, at *9, *quoting Hedges*, 404 F.3d at 750. Challenges to subject matter jurisdiction under Rule 12(b)(1) may be 'facial' or 'factual.' *Talliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citations omitted), *quoting Turicentro v. Am. Airlines*, 303 F.3d 293, 300 (3d Cir. 2002). "If the defendant's attack is facial, the court may take all allegations in the complaint as true and 'may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction.'" *Edlin*, 2008 U.S. Dist. LEXIS 41118, at *9, *quoting Liu v. Gonzales*, No. 07-1797, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007). When the challenge is factual, however, "there is no presumption of truthfulness to a plaintiff's claims in the complaint." *Edlin*, 2008 U.S. Dist. LEXIS 41118, at *10, *citing RLR Invs., LLC v. Town of Kearny*, No. 06-4257, 2007 U.S. Dist. LEXIS 44703, at *8 (D.N.J. June 20, 2007) (citations omitted).

The Township argues that Plaintiff's claims are not ripe for adjudication. "[B]ecause 'a case and controversy is a prerequisite to all federal actions,' a cause of action must meet the ripeness doctrine, which 'determines when a proper party may bring an action.'" *Miles v. Twp. of*

*Barnegat*, No. 05-1661, 2008 U.S. Dist. LEXIS 839, at *14 (D.N.J. Jan. 7, 2008), *quoting Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998). Thus, "[t]he ripeness doctrine prevent[s] federal courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Miles*, 2008 U.S. Dist. LEXIS 839, at *14, *quoting Ridge*, 150 F.3d at 323; *see also Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006). "A presumption arises that 'federal courts lack jurisdiction unless the contrary appears affirmatively from the record[, and i]t is the plaintiffs' responsibility to clearly allege facts that invoke the court's jurisdiction.'" *Miles*, 2008 U.S. Dist. LEXIS 839*, at *14, *quoting Ridge*, 150 F.3d at 323.[2]

"In determining whether a case is ripe, [courts] generally examine: (1) the fitness of the issues for judicial decision, and (2) the hardship of the parties of withholding court consideration." *Surrick,* 449 F.3d at 527, *quoting Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quotations omitted); *see also L.B. v. Grant,* No. 06-934, 2008 U.S. Dist. LEXIS 32504, (D.N.J. April 21, 2008), *quoting Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967). Specifically, "plaintiffs must show either a specific present objective harm or the threat

---

[2] "The Third Circuit has recognized that 'there is some disagreement among courts and commentators as to whether the ripeness doctrine is grounded in the case or controversy requirement or is better characterized as a prudential limitation on federal jurisdiction.'" *CBS Outdoor, Inc. v. N.J. Transit Corp.*, No. 06-2428, 2007 U.S. Dist. LEXIS 64155, at *30 (D.N.J. Aug. 30, 2007), *quoting Taylor Inv. Upper Darby Twp.*, 983 F.2d 1285, 1289 (3d Cir. 1993); *Tynes v. Pension Benefit Guar. Corp.*, No. 04-2725, 2005 U.S. Dist. LEXIS 16037, at *7 n.3 (D.N.J. Aug. 2, 2005) ("The Third Circuit has stated that 'in some circumstances the ripeness requirement is drawn from Article III limitations on judicial power and in others from prudential limitations.'"), *quoting NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). "The Third Circuit has considered ripeness issues in reviewing motions [both] in the context of failure to state a claim and subject matter jurisdiction." *CBS Outdoor*, 2007 U.S. Dist. LEXIS 64155, at *30, *citing County Concrete v. Twp. of Roxbury*, 442 F.3d 159, 163-64 (3d Cir. 2006), *Stern v. Halligan*, 158 F.3d 729, 734 (3d Cir. 1998).

of specific future harm."  *Robertson v. Samuels*, No. 06-4831, 2007 U.S. Dist. LEXIS 26027, at *16 (D.N.J. April 5, 2007), *citing Laird v. Tatum*, 408 U.S. 1, 14 (1972).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Robertson*, 2007 U.S. Dist. LEXIS 26027, at *16, *quoting Texas v. United States*, 523 U.S. 296, 300 (1998).

Plaintiff and Intervenor in the case at bar maintain that the matter is ripe for adjudication.  First, they submit that the Clinton Sewerage treatment plant has a finite capacity of 2,030,000 gpd, and that the capacity referenced in the Will-Serve letter will have to be subtracted from Plaintiff's allocation. (Pl. Opp'n at 15-16.)  Country Club claims that its position is supported by the expert report of Mr. Gleba. (*Id*. at 16-17.)

Second, Plaintiff rejects the suggestion that the Will-Serve letter was nothing but a non-binding prediction of sewage capacity, arguing that it has in fact been relied upon extensively by the Township in its applications to the New Jersey Council on Affordable Housing ("COAH").  (*Id*. at 17-18; SJM Opp'n at 7-8.) Plaintiff suggests that since the COAH proceedings are "quasi-judicial proceedings", Defendants are somehow barred by "quasi-estoppel" from contending that the letter is anything less than an improper allocation of capacity to the Township.  (Pl. Opp'n at 17-18.)

Third, SJM argues that "Defendants' attempt to . . . create speculation . . . that the Township [p]roject *might* change, that its sewerage capacity needs *might* increase or decrease, and that the Township *might* build its own sewerage treatment facility, is disingenuous and inconsistent with the Township's actions and the facts of this case." (SJM Opp'n at 13) (emphasis in original).

Finally, Plaintiff takes exception to the suggestion that "there is no justiciable controversy until plaintiff has been denied the right to transfer or profit from any of the sewage capacity it claims to own . . . ." (Pl. Opp'n at 18.) Indeed, Plaintiff contends that "[w]hile no formal request has been made to the Authority or the Township to transfer the excess capacity from the Mews, any such request would have been futile." (*Id.*)

The Court remains unconvinced by Country Club and SJM's arguments. As Defendant points out repeatedly, neither Plaintiff nor the Township has connected to (or even applied for a connection to,) the Authority's system, and Plaintiff has never been denied a connection to the system as a result of the Will-Serve Letter. Moreover, the language of the Will-Serve letter does not amount to an allocation of capacity to the Township. It remains merely an estimate that the Authority could accommodate the Township in the event it decided to rely on the Authority for sewage capacity. (Benbrook Dec. Ex. G ("the [Authority] is of the opinion that it should be able to provide you with 20,250 [gpd] of sewage effluent treatment . . . .")) It is true that the Township has relied on this representation in presenting its case to the COAH. But even if the Township had represented to COAH that sewage capacity had already been contracted for, that representation would not be relevant that to issue of whether or not the Will-Serve letter actually amounts to a binding allocation of sewage capacity.

Finally, there are a multitude of factors that may yet influence the sewage capacity available to the Authority at the time Plaintiff or Intervenor actually seeks to connect to the system, and thus whether or not they are deprived of the sewage capacity that they claim to own. Indeed, it is not yet clear whether the 90-unit housing project planned by the Township will be built, and if it is, how substantial its capacity needs will be. Moreover, it is uncertain whether the

9

Township or the Authority will expand their plant capacity before Plaintiff's need for sewage capacity arises.

Plaintiff and Intervenor may well have a valid claim in the future. It is not, however, ripe yet, as their case is built on contingent future events that cannot be speculated upon at this time. *See Bryant v. Samuels*, No. 06-5396, 2006 U.S. Dist. LEXIS 89215, at *14 (D.N.J. Nov. 27, 2006) ("Since Petitioner's claim, as of now, presents nothing but pure conjecture about the outcome of future events[,] Petitioner's classification claim is unripe for resolution and will be dismissed without prejudice."); *Markland v. Nash*, No. 05-4708, 2006 U.S. Dist. LEXIS 38631, at *19 (D.N.J. June 12, 2006) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all . . . ). Moreover, it is not clear that the Court's decision to withhold consideration at this point would lead to significant hardship for any of the parties.

Viewing all evidence in the light most favorable to the non-movants, the Court holds that Country Club and SJM have failed to set forth sufficient factual allegations to establish ripeness – and thus a right to relief – above the speculative level. Their claims must therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6). In the alternative, the Court holds that Plaintiff and Intervenor have failed to meet their burden of establishing ripeness in response to Defendant's facial attack, and their claims must therefore be dismissed under Federal Rule of Civil Procedure 12(b)(1).

**CONCLUSION**

For the foregoing reasons, the Court will grant the Township's motion to dismiss and deny as moot Plaintiff's motion for a preliminary injunction and Plaintiff's motion to compel

metering.  Plaintiff's Amended Complaint and SJM's Intervenor Complaint are dismissed with prejudice until such time as the facts surrounding this matter give rise to a ripe case or controversy.  An appropriate form of Order accompanies this Opinion.


Dated: June 17, 2008

                 s/ Garrett E. Brown, Jr.
               GARRETT E. BROWN, JR., U.S.D.J.